# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

S.C., as Parent and Next Friend
of A.J., a Minor,

      Plaintiff,

v.

                                   Case No. 18-2228-DDC-JPO

LANSING UNIFIED SCHOOL
DISTRICT #469, et al.,

      Defendants.

_____

## MEMORANDUM AND ORDER

This matter is before the court on defendants Steve Dike, Darrel Stufflebeam, and

Lansing Unified School District #469's Motion for Judgment on the Pleadings.  Doc. 23.

Plaintiff's Complaint asserts three claims:  (1) a Title IX claim against the District; (2) a 42

U.S.C. § 1983 substantive due process claim against all defendants; and, (3) a 42 U.S.C. § 1983

policy or custom claim against the District.   The parties agreed plaintiff would dismiss the §

1983 substantive due process claim (Count II).  Doc. 35.  And so, defendants' present motion

contends that plaintiff has failed to state plausible claims against the District under Title IX

(Count I) and 42 U.S.C. § 1983 (Count III).  Plaintiff has filed a Memorandum in Opposition.

Doc. 33.  And, defendants have filed a Reply.  Doc. 34.  After considering the arguments and

authorities presented in the parties' papers, the court denies defendants' Motion for Judgment on

the Pleadings on Count I and Count III.  The court explains why, below.

## I.      Facts

Defendants have moved for judgment on the pleadings under Fed. R. Civ. P. 12(c).

Courts evaluate a Rule 12(c) motion under the same standard as a Rule 12(b)(6) motion to

dismiss. *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). The following facts are taken primarily from plaintiff's Complaint (Doc. 1), accepted as true, and viewed in the light most favorable to them. *Id.* (explaining that, on a motion for judgment on the pleadings, the court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same" (citation omitted)).

A.J. was enrolled as a Junior at Lansing High School during the 2017–18 school year. Defendant Jacob Baker was A.J.'s chemistry teacher in the fall 2017 semester. Beginning around September 2017, Mr. Baker subjected A.J. to ongoing sexually harassing comments during class.

Around September 5, 2017, A.J. was in Mr. Baker's class. A.J. and a male friend joked during conversation about the male classmate becoming pregnant. Mr. Baker injected himself into the conversation declaring he "wasn't betting on [plaintiff's male friend] to be the one getting pregnant this year." Upon information and belief, Mr. Baker was insinuating that A.J. would get pregnant during the school year.

Around the third week of November 2017, A.J. was bouncing on a yoga ball available to the students in Mr. Baker's class. While plaintiff bounced on the ball, Mr. Baker told plaintiff, "You're a little too good at that." Mr. Baker made this comment during class, and multiple students heard it. Male students in the class laughed at Mr. Baker's comment, then proceeded to make their own sexually inappropriate jokes about A.J. Mr. Baker witnessed the male students sexually harassing A.J., but he failed to intervene.

Around November 29, 2017, A.J. sat at her desk in the front of Mr. Baker's classroom, near Mr. Baker's desk. Mr. Baker initiated a series of questions about A.J.'s ex-boyfriend, ultimately telling A.J. that he did not like A.J.'s ex-boyfriend. A.J. responded that she did not

like her ex-boyfriend either.  Mr. Baker told A.J. that—if she dated her ex-boyfriend even though she did not like him—her ex-boyfriend "must have been good at laying the pipe."

Around December 1, 2017, A.J.'s mother, S.C., called defendant Steve Dike, the Lansing High School principal, to report Mr. Baker's sexually harassing comments toward A.J.  And, around December 4, 2017, A.J. and S.C. met with Principal Dike and an assistant principal to discuss Mr. Baker further.  During the meeting, Principal Dike said he would remove A.J. from Mr. Baker's chemistry class pending the outcome of an investigation.  During the investigation, Mr. Baker admitted to making the sexually harassing comments to A.J.

Around December 8, 2017, S.C. met with defendant Darrel Stufflebeam, the Lansing Unified School District superintendent, to discuss Mr. Baker's sexual harassment of A.J.  Upon information and belief, Mr. Baker was placed on paid suspension around December 8, 2017, just two days before the holiday break.

When classes resumed around January 4, 2018, Mr. Baker returned to school.  A.J. was forced to see Mr. Baker at school and on school premises many times per week.

Around April 25, 2018, A.J. informed her mother that she was being assigned to Mr. Baker's homeroom, despite her previous complaints of sexual harassment.  Again, S.C. complained and asked administrators not to place A.J. in Mr. Baker's homeroom because of previous sexual harassment.  Although the school assigned A.J. to a different homeroom, the Complaint alleges, on information and belief, that Mr. Baker received no additional discipline and is still entrusted with supervising other minor female students.  The thought of being assigned to Mr. Baker's homeroom class caused A.J. further emotional distress, including, but not limited to, fear of attending school and anxiety.

Mr. Baker made his comments on school property, on school grounds, during school hours, and in the presence of other students in the chemistry class. Based on information and belief, Mr. Baker previously has made sexual harassing comments toward at least four female students besides A.J.

To date, defendants have not offered A.J. counseling or any other type of mental health services. Because of the sexual harassment A.J. experienced, and because defendants failed to prevent the sexual harassment and otherwise take appropriate remedial actions to address Mr. Baker's conduct and assist A.J., her academic performance has suffered. And, A.J. has suffered emotional distress due to defendants' acts and omissions, particularly the omissions by Superintendent Stufflebeam and Principal Dike: They had actual and/or constructive knowledge of Mr. Baker's earlier incidents at the school, but allowed Mr. Baker to remain in school.

Superintendent Stufflebeam and Principal Dike failed to take steps preventing or addressing A.J.'s harm, including, but not limited to, the following: (1) fully investigating complaints about Mr. Baker's similar conduct with other female students; (2) preventing Mr. Baker from sexually harassing additional students, including A.J., by removing him from the school and/or eliminating his contact with minor female students; (3) educating faculty and students about district policies and procedures to prevent and address sexual harassment and unwanted contacts by and between students and district employees in the future; and (4) failing to take seriously, and investigate, address, and remedy allegations of unwelcome sexual harassment by district employees, despite actual or constructive knowledge that sexual harassment was occurring between students and district employees.

Based on information and belief, defendant Lansing Unified School District #469 ("the District") had policies and procedures in place to prevent and remedy sexual harassment suffered

by all students, and they require the District to take appropriate action to prevent and remedy such harms. Upon information and belief, the District and its officials and employees, including, but not limited to, Superintendent Stufflebeam, Principal Dike, and Mr. Baker, failed to prevent and remedy the sex discrimination and harassment within its District, which A.J. endured. Defendants' failure occurred despite earlier complaints of inappropriate or unwelcome contacts by Mr. Baker. Plaintiff alleges defendants' actions and omissions were committed with deliberate indifference toward A.J.'s well-being and rights.

Defendants failed to adhere to the District's policies for appropriately disciplining Mr. Baker for his pattern of sexually harassing minor female students. And defendants failed to prevent or remedy A.J.'s sexual harassment effectively.

## II.     Legal Standard

### A.     Motion for Judgment on the Pleadings Under Fed. R. Civ. P. 12(c)

Defendants have moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). Courts evaluate a Rule 12(c) motion under the same standard as a Rule 12(b)(6) motion to dismiss. *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

Under this Rule 12(b)(6) standard, the court must accept all facts pleaded by the non-moving party as true and draws any reasonable inferences in favor of the non-moving party. *Id.* "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court

reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court has explained, simply "will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In short, the court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 557 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (internal quotation omitted).

## B.    Title IX

"No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). Title IX's express enforcement comes via administrative agencies—*i.e.*, federal agencies condition federal funds on this nondiscrimination mandate, and they may withhold or terminate funds based on a recipient's failure to comply with that mandate. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280–81. (1998). But, to enforce Title IX's mandate, the Supreme Court also has recognized an implied private right of action for money damages. *See id.* (first citing *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979); then citing *Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60 (1992)). In *Gebser*, the Court further refined the scope of the private right of action under Title IX: "[A] damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Id.* at 290; *Davis Next Friend*

6

*LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999); *see also Doe No. 1 v. Boulder Valley Sch. Dist. No. RE-2*, No. 11-CV-02107-PAB-KLM, 2012 WL 4378162, at *4 (D. Colo. Sept. 25, 2012), *aff'd*, 523 F. App'x 514 (10th Cir. 2013) ("Under Title IX, a school district cannot be held liable on a theory of respondeat superior for an employee's violation of the statute" (citing *Gebser*, 524 U.S. at 285)).  But, a plaintiff may bring such claims only against educational institutions, and not against the institution's employees or administrators.  *Clay v. Bd. of Trs. of Neosho Cty. Cmty. Coll.*, 905 F. Supp. 1488, 1495 (D. Kan. 1995).

Teacher-on-student sexual harassment constitutes discrimination under Title IX.  *See X. v. Fremont Cty. Sch. Dist. No. 25*, 162 F.3d 1175 (10th Cir. 1998) (per curiam) (citing *Franklin*, 503 U.S. at 74–75); *see also Gebser*, 524 U.S. at 290.  A school district will be held accountable for its employees' actions "(1) only if the school remains deliberately indifferent to acts of harassment of which it has actual knowledge, (2) the harassment was reported to an appropriate person . . . with the authority to take corrective action to end the discrimination, and (3) the harassment was so severe, pervasive and objectively offensive that it . . . deprived the victim of access to the educational benefits or opportunities provided by the school."  *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006) (internal quotation marks and citations omitted).  "This limited rule imposes liability only on those school districts that choose to ignore Title IX's mandate for equal educational opportunities."  *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999).

## C. 42 U.S.C. § 1983—Equal Protection Claim[1]

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. "A denial of the equal protection of the laws under color of state law is actionable under 42 U.S.C. § 1983." *See Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124 (10th Cir. 2008). And, sexual harassment by state actors may violate the Equal Protection Clause. *Id.* (citing *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989)).

To establish a basis for liability against an employer, such as the District is here, the plaintiff "must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the [District], or are taken by an official with final policy making authority." *Murrell*, 186 F.3d at 1249 (citing *Randle v. City of Aurora*, 69 F.3d 441, 446–50 (10th Cir. 1995)). Plaintiff may take one of two paths for liability under the policy or custom theory. First, plaintiff may show an actual official policy, meaning a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers." *Id.* (quoting *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (further citation omitted)). Second, absent an official policy, the § 1983 plaintiff may hold the District liable "'if the discriminatory practice is so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Id.* (quoting *Lankford*, 73 F.3d at 286) (further citation omitted)). To prove a custom or practice of failure to receive, investigate, or act on complaints of constitutional violations, a plaintiff must allege "(1) a continuing, widespread, and persistent pattern of misconduct by the state; (2) deliberate indifference to or tacit authorization of conduct

---

[1] In Count III of the Complaint, plaintiff alleges that defendants violated her right to substantive due process under the Fourteenth Amendment. *See* Doc. 1 at 13. But, the allegations in Count III and the parties' papers suggest that plaintiff is trying to assert—and defendants are trying to dismiss—a claim under the Equal Protection Clause.

by policymaking officials after notice of the conduct; and (3) a resulting injury to the plaintiff." *See Doe No. 1*, 2012 WL 4378162, at *8 (citing *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993)).

## III. Discussion

Defendants contend that plaintiff's Complaint fails to state plausible claims against the District under Title IX (Count I) and 42 U.S.C. § 1983 (Count III). The court addresses these claims, in turn, below.

### A. Plaintiff's Title IX Claim

The court first considers plaintiff's Title IX claim. Plaintiff asserts two theories of liability under Title IX. First, plaintiff asserts the District—through Superintendent Stufflebeam and Principal Dike[2]—had actual knowledge that Mr. Baker had sexually harassed four students before A.J., and the District was deliberately indifferent to harassment—and so, the District's deliberate indifference to known acts of harassment allowed Mr. Baker to harass A.J., depriving her of educational opportunities. Second, plaintiff contends that the District—after becoming aware of A.J.'s allegations against Mr. Baker—was deliberately indifferent to her complaints of harassment. This made A.J. vulnerable to more harassment and deprived her of educational opportunities. *See Escue*, 450 F.3d at 1152–53 (raising identical theories under Title IX).

---

[2] Plaintiff has pleaded sufficient facts, if true, to qualify Principal Dike and Superintendent Stufflebeam as "appropriate persons" under Title IX. An "appropriate person" is someone who "at a minimum ha[d] authority to address the alleged discrimination and to institute corrective measures." *Gebser*, 524 U.S. at 290. Defendants never argue Superintendent Stufflebeam and Principal Dike are not "appropriate persons." *See Doe No. 1*, 2012 WL 4378162, at *4 ("Although the Tenth Circuit has not provided a bright line rule to determine who qualifies as an 'appropriate person,' it has found that high school principals generally qualify.") (citations omitted)); *see id.* (finding, as conceded by defendant, that superintendent, principal, and assistant principal were "appropriate persons"). So, for this motion, the court assumes that Principal Dike and Superintendent Stufflebeam qualify as appropriate persons.

### 1. Heightened Risk of Sexual Harassment

Plaintiff alleges that the District actually knew about four previous sexual harassment incidents involving Mr. Baker and female students. Given these earlier complaints by female students, plaintiff alleges the District exhibited deliberate indifference by failing to take proper action against Mr. Baker. This indifference allowed Mr. Baker to subject A.J. to sexual harassment. Whether plaintiff may base her Title IX claim on a District's awareness of prior complaints of harassment by other students remains an open question in the Tenth Circuit. But, predicting that the Circuit would apply this permissive approach, the court finds plaintiff plausibly has alleged facts capable of supporting a finding of the actual knowledge and deliberate indifference elements of her Title IX claim.

### a. Actual Knowledge

Plaintiff alleges that the District actually knew that Mr. Baker posed a substantial risk to female students based on his alleged sexual harassment of at least four other female students. Plaintiff relies on the theory that defendants, based on earlier reports of sexual harassment by other students, had actual knowledge of Mr. Baker's propensity to harass female students sexually. The Tenth Circuit has examined the validity of this theory on several occasions. And while the Circuit has not foreclosed the theory, the question of what constitutes "notice" remains an open one. To provide some perspective on this aspect of the analysis, the court first provides a brief overview of this notice theory in the Tenth Circuit.

In *Escue*, the Tenth Circuit reviewed the Supreme Court's decision in *Gebser*, which had explained that a Title IX claim against a school for sexual harassment required the plaintiff to show an appropriate person had actual knowledge of discrimination in the recipient's program. *Escue*, 450 F.3d at 1153. In the context presented here, "recipient" refers to the District. The

Circuit read the phrase "in the recipient's program" to mean the Supreme Court had decided implicitly that "harassment of persons other than the plaintiff may provide the school with the requisite notice to impose liability under Title IX." *Id.*

But, as *Escue* explained, district courts interpreting "requisite notice" have taken one of two positions. The more permissive approach permits a plaintiff to establish notice based on earlier complaints of harassment by people other than the current plaintiff—*i.e.*, the school must have "'actual knowledge of a *substantial risk* of abuse to students based on prior complaints by other students.'" *Id.* at 1154 (quoting *Doe A. v. Green*, 298 F. Supp. 2d 1025, 1033 (D. Nev. 2004) (further citation omitted)). Other courts have taken a stricter approach, requiring notice of current harassment in the recipient's programs—*i.e.*, notice of harassment underway in the recipient's program *currently*. *Id.* at 1153; *see Baynard v. Malone*, 268 F.3d 228, 238 n.9 (4th Cir. 2001) ("We believe that the actual notice requirement could have been satisfied . . . if [the principal] had had actual knowledge that [the teacher] was currently abusing one of his students, even without any indication of which student was being abused."). In *Escue*, the Tenth Circuit did not take a position on these competing standards, finding that plaintiff had failed to satisfy even the more permissive standard—*i.e.*, notice of prior complaints by others. *Escue*, 450 F.3d at 1153–54. Consequently, the Circuit has not yet decided which one of the two alternative tests it would adopt. *See Rost*, 511 F.3d at 1119.

In this case, the court predicts the Tenth Circuit would apply the more permissive standard to this teacher-on-student Title IX claim. Three reasons convince the court to make this prediction. First, in an unpublished opinion,[3] the Tenth Circuit affirmed a District of Colorado opinion from Judge Brimmer, which had applied the more permissive standard—notice of prior

---

[3]     Although not binding, unpublished opinions may be cited for their persuasive value. 10th Cir. R. 32.1(A).

complaints by others—on a motion to dismiss plaintiff's Title IX claim. *Doe No. 1 v. Boulder Valley Sch. Dist. No. RE-2*, 523 F. App'x 514 (10th Cir. 2013) (unpublished), *aff'g* No. 11-CV-02107-PAB-KLM, 2012 WL 4378162 (D. Colo. Sept. 25, 2012). Second, the Eleventh Circuit has postulated that the substantial risk based on prior complaints test "emanates from teacher-on-student Title IX cases, whose requirements are not as rigorous as student-on-student cases." *Hill v. Cundiff*, 797 F.3d 948, 969 (11th Cir. 2015). Here, plaintiff alleges a teacher-on-student Title IX claim. Third, it appears that the stricter standard "has been rejected by almost every court to have considered the matter." *Thomas v. Bd. of Trs. of the Neb. State Colls.*, No. 8:12-CV-412, 2014 WL 12577381, at *5 (D. Neb. Mar. 31, 2014). Finding this reasoning persuasive, the court applies the more permissive prior notice theory to plaintiff's claim in this case.

Defendants' analysis of this theory contends that plaintiff cannot establish "actual knowledge." More specifically, defendants challenge the sufficiency of plaintiff's Complaint, which alleges on "information and belief, in addition to Plaintiff A.J., Defendant Baker has previously made sexually harassing comments toward at least four (4) other female students." Doc. 1 at 6 (Compl. ¶ 45). Defendants contend that notice of earlier complaints must be "sufficiently detailed," and plaintiff's allegation here does not satisfy that standard.

The court disagrees. The Complaint alleges the following: On information and belief, Mr. Baker made sexual harassment comments toward at least four (4) other female students before the alleged conduct involving plaintiff. Doc. 1 at 6 (Compl. ¶ 45). Superintendent Stufflebeam and Principal Dike, plaintiff alleges, had "actual and/or constructive knowledge[4] of Defendant Baker's earlier incidents occurring in their school and yet allowed Defendant Baker to remain in

---

[4]      Constructive knowledge will not do. *Gebser*, 524 U.S. at 288 ("Most significantly, Title IX contains important clues that Congress did not intend to allow recovery in damages where liability rests solely on principles of vicarious liability or constructive notice.").

school and injure Plaintiff causing emotional distress."  In short, plaintiff alleges that defendants

failed to respond effectively to prior allegations, which in turn, fostered an environment where

Mr. Baker's misconduct appeared tolerable.  Defendants' inaction allowed Mr. Baker to sexually

harass plaintiff.  *Id.* at 9–10 (Compl. ¶¶ 61–64).  Other courts have found this level of detail

sufficient at this stage of the case.  *See Joyce*, 2018 WL 3009105, at *5 ("In the Court's view,

Joyce's allegations of previous widespread misconduct by Walker are sufficient to open the

doors to discovery."); *G.S. ex rel. J.A. v. Sch. Dist. of City of Monessen*, No. CIV.A. 11-1643,

2012 WL 1328566, at *4 (W.D. Pa. Apr. 17, 2012) (finding plaintiff had stated a Title IX claim

when plaintiff alleged defendant "engaged in similar acts and conduct directed toward other

students" and that defendants had notice of "inappropriate conduct"); *Doe 20 v. Bd. of Educ. of

Cmty. Unit Sch. Dist. No. 5*, 680 F. Supp. 2d 957, 971–72 (C.D. Ill. 2010).

But, defendants also contend, the Complaint's allegations are insufficient under Tenth

Circuit precedent—specifically, that plaintiff's allegations fail to describe whether the prior

complaints were similar, frequent, or close in time to plaintiff's harassment.  When analyzing

whether an institution has "actual knowledge of a *substantial risk* of abuse to students based on

prior complaints by other students," the Tenth Circuit has considered—albeit on summary

judgment—whether earlier incidents of harassment the school knew about were "too dissimilar,

too infrequent and/or too distant in time[.]"  *Escue*, 450 F.3d at 1153–54 (citations omitted); *see

also Doe No. 1*, 2012 WL 4378162, at *5 (applying analysis at motion to dismiss stage).  *But see

Joyce*, 2018 WL 3009105, at *4 (considering the "too dissimilar, too infrequent, and/or too

distant in time" test better suited for summary judgment).

Using this test, the court concludes plaintiff has met her pleading burden.  Here, the

alleged complaints are of a substantially similar nature—*i.e.*, sexual comments made to female

students at Lansing High School.  *Cf. Gebser*, 524 U.S. at 291 (reasoning an earlier complaint about a teacher's inappropriate comments "was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student"); *J.M. ex rel. Morris*, 397 F. App'x at 451 ("Both *Gebser* and *Escue* concluded that from the types of complaints made, the eventual alleged conduct could not have been anticipated[.]").  Also, the court is satisfied that four earlier reports to the District is sufficient to satisfy the frequentness prong.  Last, turning the time of prior complaints—or, sometimes called staleness—the Complaint provides no allegations about this aspect of the analysis.  In her Memorandum in Opposition, plaintiff contends that the Complaint includes allegations that the other female students were enrolled at LHS at the same time as plaintiff.  *See* Doc. 33 at 10.  But the Complaint contains no such allegation.  *See generally* Doc. 1.  This omission isn't fatal at this stage—considering plaintiff has satisfied the two other factors.  In sum, the court concludes that plaintiff has met her burden of pleading facts sufficient to allege actual knowledge.

### b.  Deliberate Indifference

"[D]eliberate difference exists where the response 'to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'"  *J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29*, 397 F. App'x 445, 453 (10th Cir. 2010) (unpublished) (citing *Davis*, 526 U.S. at 648).  Under Title IX, "'deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it.'"  *Rost ex rel. K.C.*, 511 F.3d at 1123 (quoting *Davis*, 526 U.S. at 644–45).  A "'minimalist response is not within the contemplation of a reasonable response.'"  *Escue*, 450 F.3d at 1155 (quoting *Vance*, 231 F.3d at 260).  "Typically, whether school officials acted with deliberate indifference is a question of fact to be resolved by the jury after considering all relevant evidence; nevertheless, the Supreme

Court has held that, '[i]n an appropriate case,' a court may determine that a school's response was not 'clearly unreasonable' as a matter of law." *Joyce v. Wright State Univ.*, No. 3:17-CV-387, 2018 WL 3009105, at *3 (S.D. Ohio June 15, 2018) (quoting *Davis*, 526 U.S. at 649).

The court also concludes that plaintiff has pleaded facts sufficient to support a deliberate indifference finding. A reasonably jury could find that the District's response to earlier complaints of sexual harassment against Mr. Baker constituted inadequate and ineffective action because Mr. Baker remained in a place where he could sexually harass plaintiff. The court thus finds these allegations sufficient to withstand a motion for judgment on the pleadings. This doesn't mean that the allegations in the Complaint are true. Plaintiff bears the burden to adduce evidentiary support for them, and time will tell whether plaintiff can muster it. But for now, the court finds that plaintiff has alleged deliberate indifference sufficiently to survive defendants' motion.

### 2. Post-Reporting Sexual Harassment

Under her second theory, plaintiff alleges that A.J. informed Principal Dike and Superintendent Stufflebeam that Mr. Baker made several sexually harassing comments to her in class. Plaintiff alleges that Principal Dike and Superintendent Stufflebeam acted with deliberate indifference in their response to A.J.'s complaints. And, plaintiff alleges, their failure to respond to her complaints made A.J. vulnerable to more harassment, which deprived her of educational opportunities.

As the court has explained, it remains an open question in our Circuit whether plaintiff may base her claim on notice of earlier complaints of sexual harassment by others. And, under the stricter standard—requiring the District have actual knowledge of and be deliberately indifferent to current complaints of sexual harassment—plaintiff's allegations here present a

much closer call. However, the court concludes, even if the stricter standard governed this motion, plaintiff has stated a plausible claim for reasons explained, below.

### a. Actual Knowledge

Plaintiff has pleaded facts sufficient to establish that the District knew about Mr. Baker's harassing statements made toward A.J. The Complaint alleges that, on December 1, 2017, A.J.'s mother, S.C., called Principal Dike to report the sexually harassing comments Mr. Baker had made to plaintiff. Doc. 1 at 5 (Compl. ¶ 32). And, the Complaint alleges, A.J. and her mother met with Principal Dike and an assistant principal on December 4, 2017, to discuss Mr. Baker's harassment of A.J. *Id.* (Compl. ¶ 33). Last, the Complaint alleges that A.J.'s mother met with Superintendent Stufflebeam on December 8, 2017. *Id.* (Compl. ¶ 36). The court concludes plaintiff's pleaded facts could support a finding or inference that defendants knew about Mr. Baker's purported sexual harassment of A.J.

### b. Deliberate Indifference

Plaintiff contends that the District acted with deliberate indifference when Principal Dike said he would investigate A.J.'s claim; suspended Mr. Baker for two days; and then the District assigned A.J. to Mr. Baker's homeroom in April 2018. Defendants respond, arguing that their response—as a matter of law—was not deliberately indifferent because plaintiff does not allege Mr. Baker harassed her after she met with Superintendent Stufflebeam and Principal Dike. This argument appears consistent with the Complaint's allegations. The Complaint alleges merely that plaintiff, after meeting with Principal Dike and Superintendent Stufflebeam, was "forced to see Defendant Baker at school and on school premises multiple times per week." Doc. 1 at 5 (Compl. ¶ 39). And it alleges Mr. Baker inflicted no additional harassment.

The Tenth Circuit—at least at the summary judgment stage—has indicated that whether plaintiff suffered harassment after the institution knew of the harassment is an important factor in analyzing deliberate indifference. *See Escue*, 450 F.3d at 1155 ("Significantly, we note that Ms. Escue does not allege that further sexual harassment occurred as a result of NOC's deliberate indifference."); *Rost*, 511 F.3d 1114 ("Here the district's response did not cause K.C. to undergo harassment or make her liable or vulnerable to it.").

But, "the courts that have directly addressed this issue,"—that is, whether further harassment is required *to state a Title IX claim*—"have held that *Davis* requires that the funding recipient's deliberate indifference leave the student 'liable or vulnerable to' further harassment, not that further harassment actually occur." *Weckhorst v. Kan. State Univ.*, 241 F. Supp. 3d 1154, 1174 (D. Kan. 2017) (collecting cases), *motion to certify appeal granted*, No. 16-CV-2255-JAR-GEB, 2017 WL 3701163 (D. Kan. Aug. 24, 2017). *But see, e.g.*, *Yoona Ha v. Nw. Univ.*, No. 14 C 895, 2014 WL 5893292, at *2 (N.D. Ill. Nov. 13, 2014) (dismissing plaintiff's claim because although the complaint alleged that the harasser's "presence on the campus caused [plaintiff] considerable grief," the court concluded "this is not actionable under Title IX").

Plaintiff argues that the District's response to A.J.'s complaints amounted to deliberate indifference. Specifically, plaintiff alleges the District knew of four earlier sexual harassment complaints against Mr. Baker. So, although Principal Dike and Superintendent Stufflebeam met with A.J. and her mom about Mr. Baker's conduct, plaintiff argues the District's response was so insufficient that it manifested deliberate indifference.

On this motion for judgment on the pleadings, the court agrees. A reasonable jury could infer that the District's response—*i.e.*, in light of the earlier complaints, suspending Mr. Baker for two days was a "minimalist response . . . not within the contemplation of a reasonable

response." *Escue*, 450 F.3d at 1155 (quoting *Vance*, 231 F.3d at 260). Plaintiff also alleges that, over the next semester, A.J. was "forced to see Defendant Baker at school and on school premises, multiple times per week." Doc. 1 at 5 (Compl. ¶ 39). And, the Complaint alleges that the District then assigned A.J. to Mr. Baker's homeroom—although the Complaint explains that, after A.J.'s mother complained, the school reassigned A.J. to a different homeroom. Doc. 1 at 5–6 (Compl. ¶¶ 40–42). In short, the Complaint's alleged facts—if proved—could permit a reasonable jury to infer that the District's investigative or corrective approach was so lacking it constituted deliberate indifference. And, at the very least, such a jury plausibly could infer that the District's failure to take additional measures made plaintiff more vulnerable to additional harassment from Mr. Baker. The court thus declines to find that the District's actions warrant dismissal under the deliberate indifference element.

### 3. Severe, Offensive, and Pervasive to Deprive Plaintiff of Benefits and Opportunities of the Educational Program

Finding plaintiff has satisfied the pleading requirements for the first two elements of her Title IX claim, the court next considers, under both theories she invokes, whether plaintiff has alleged facts sufficient to demonstrate the harassment was "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650. Defendants raise several arguments why, they contend, plaintiff has failed to plead facts sufficient to satisfy this element of her Title IX claim. But, none persuade the court to decide the claim at this stage of the case. Defendants argue that verbal harassment alone is insufficient to state a Title IX violation. Defendants rely on *Higgins v. Saavedra*, No. CIV 17-0234 RB/LF, 2018 WL 327241 (D.N.M. Jan. 8, 2018), for this argument. Respectfully, the court disagrees with defendants' application of that case.

In *Saavedra*, the plaintiff alleged a Title IX violation after, one night during a cheerleading camp, two other students teased plaintiff about her appearance, recorded plaintiff while she was in the shower, and then posted the video on social media. *Id.* at *1, *8. Considering whether this conduct was "pervasive," the court explained that the plaintiff's harassment claim was confined to "a single evening of gender-based harassment—much of which consisted of verbal taunting, which is not enough, by itself to state a Title IX claim. Based on the Amended Complaint, Plaintiff has simply not stated facts to show the harassment was pervasive, and, therefore, has failed to state a plausible claim under Title IX for gender-based harassment." *Id.* at *9.

Defendants construe *Saavedra* as a holding about the offensive or severity requirement. But the language they rely on actually addresses pervasiveness. *See id.* at *8 (discussion under subheading "3. Plaintiff fails to show that any gender-based harassment was pervasive."). In contrast to the discussion in *Saavedra*, plaintiff here has not alleged just one episode of harassment. Instead, plaintiff alleges three distinct situations where Mr. Baker made sexually harassing comments to A.J. *See Nieto v. Kapoor*, 268 F.3d 1208, 1219 n.8 (10th Cir. 2001) ("[W]hile courts have tended to count events over time to determine pervasiveness, the word 'pervasive' is not a counting measure. The trier of fact utilizes a broader contextual analysis."). And, thus, unlike *Saavedra*, the court finds that plaintiff has pleaded facts—that if proved—could support a finding that the alleged harassment by Mr. Baker was pervasive.

Defendants also cite *Davis* for a similar argument—*i.e.*, Title IX claims require more than just verbal harassment, such as objectively offensive touching. *See* Doc. 34 at 2 (citing *Davis*, 526 U.S. at 653). To the extent that defendants contend a Title IX claim will not lie for "simple acts of teasing and name-calling among school children," *id.* at 652, the court agrees. But, a

19

distinction exists between *Davis* (student-on-student discrimination) and plaintiff's claim (teacher-on-student discrimination) here. As the Court explained in *Davis*, "[W]hether gender-oriented conduct rises to the level of actionable 'harassment' thus 'depends on a constellation of surrounding circumstances, expectations, and relationships." *Davis*, 526 U.S. at 651 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). These circumstances include "the ages of the harasser and the victim and the number of individuals involved." *Id.* (citation omitted). Importantly,

> [T]hat it was a teacher who engaged in harassment in *Franklin* and *Gebser* is relevant. The relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity. *Peer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment.*

*Id.* at 653 (emphasis added).

So, *Davis* plainly recognizes that the teacher-student dynamic fits squarely within the constellation of circumstances determining whether gender-based conduct rises to the level of harassment. And, here, the court concludes, plaintiff has pleaded facts sufficient to survive defendants' motion. Construing all inferences in plaintiff's favor, Mr. Baker made several statements in front of the class about plaintiff's sexuality—*e.g.*, making insinuating comments about plaintiff's sexual expertise while she sat on an exercise ball, which prompted laughter and comments from other students in the class. *See, e.g.*, *Brodeur v. Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 213–14 (D.N.H. 2009) ("The nature of [the teacher's] remarks—calling the size of [plaintiff's] buttocks to the attention of the entire class on multiple occasions—and the students' response to it—including laughter by the boys in the class and uncomfortable feelings by [plaintiff]—suggests that the conduct was 'humiliating rather than a mere offensive utterance,' also an important factor in the hostile environment analysis." (citation omitted)); *cf. Walsh v.*

*Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1115 (E.D. Cal. 2011) (granting motion to dismiss where plaintiff alleged teacher called student "fruity" in front of class because "plaintiff failed to allege any facts surrounding the circumstances in which the harassing comments were allegedly made" and "in the absence of such, it remains unclear whether [the teacher's] single comment was sufficiently hostile and severe to constitute actionable sexual harassment under Title IX").  The court thus concludes that plaintiff has pleaded facts sufficient to allege Mr. Baker's conduct was both severe and objectively offensive for Title IX purposes.  This is all she must do on a motion for judgment on the pleadings.

Last, plaintiff has alleged facts sufficient to support a claim that the alleged harassment denied A.J. the benefits of the educational program.  The court must accept, as true, the factual allegation that A.J.'s academic performance has suffered.  Doc. 1 at 6. (Compl. ¶ 47).  And, plaintiff contends A.J. has experienced humiliation, fear, anxiety, and other emotional distress— such emotional distress, in part, produced by the District assigning A.J. to Mr. Baker's homeroom after her sexual harassment complaints.  *Id.* at 6 (Compl. ¶ 43), 8 (Compl. ¶ 57).  The court acknowledges that a "mere decline in grades" is evidence of, but not dispositive of, a link between the alleged harassment and the adverse affect on A.J.'s educational opportunities.  *See Davis*, 526 U.S. at 629.  But, taken together with plaintiff's other allegations of emotional distress and fear about attending school, the court finds that plaintiff has alleged facts to state a plausible claim that Mr. Baker's harassment deprived her of the benefits of the educational program.  The court thus finds that plaintiff alleges a plausible Title IX claim sufficient to survive defendants' Motion for Judgment on the Pleadings.

**B.      42 U.S.C. § 1983**

The court next turns to plaintiff's § 1983 claim. To maintain a claim for municipal liability, plaintiff plausibly must allege that Mr. Baker's actions were representative of an official policy or custom of the institution, or taken by an official with final policymaking authority. *See Doe No. 1*, 2012 WL 4378162, at *8.

Plaintiff does not claim the District had an official policy of allowing employees to sexually harass students. Doc. 1 at 13–14 (Compl. ¶¶ 82–83) (alleging District acted in contravention of its written policies). Nor does plaintiff allege that Mr. Baker—the alleged harasser—was an official with final policymaking authority. Instead, plaintiff argues the District followed a custom of failing to respond to or prevent sexual harassment in its schools. *See Rost*, 511 F.3d at 1125 ("In the absence of an official policy, a municipality may still be liable for the widespread and persistent practice of sexual harassment which constitutes a custom." (citing *Starrett v. Wadley*, 876 F.2d 808, 820 (10th Cir. 1989))). To plead a custom or practice of failing to receive, investigate, or act on complaints of constitutional violations, a plaintiff must allege (1) a continuing, widespread, and persistent pattern of misconduct by the state; (2) deliberate indifference to or tacit authorization of conduct by policymaking officials after notice of the conduct; and (3) a resulting injury to the plaintiff. *Doe No. 1*, 2012 WL 4378162, at *8.

Plaintiff here has stated a plausible § 1983 claim. Although defendants attack plaintiff's allegations as unadorned, plaintiff need not adorn her factual allegations. To survive the current motion, plaintiff only must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As discussed, plaintiff has alleged that the District, Principal Dike, and Superintendent Stufflebeam knew of at least four prior instances of sexual harassment by Mr. Baker against other female students at Lansing High School, besides

that alleged by plaintiff. Plaintiff also alleges that the District acted with deliberate indifference by contradicting its applicable written polices and failing to stop or prevent Mr. Baker's conduct. And, plaintiff alleges that, because of the District's failure, Mr. Baker harassed her, causing her physical pain, emotional distress, and mental anguish. The court finds these factual allegations plausibly state a claim against the District under the Equal Protection Clause. And, so, the court denies defendants' motion for judgment on the pleadings on plaintiff's § 1983 claim.

## IV. Conclusion

For the reasons it has explained, the court denies defendants Steve Dike, Darrel Stufflebeam, and Lansing Unified School District #469's Motion for Judgment on the Pleadings. Doc. 23.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Steve Dike, Darrel Stufflebeam, and Lansing Unified School District #469's Motion for Judgment on the Pleadings (Doc. 23) on Count I and Count III of plaintiff's Complaint is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Motion for Judgment on the Pleadings (Doc. 23) on Count II of plaintiff's Complaint is denied as moot.

**IT IS SO ORDERED.**

**Dated this 22nd day of March, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**